**Michael E. Haglund,** OSB No. 772030
email:  mhaglund@hk-law.com
**Eric J. Brickenstein,** OSB No. 142852
Email: ebrickenstein@hk-law.com
**HAGLUND KELLEY LLP**
200 S.W. Market Street, Suite 1777
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### (Eugene Division)

| | |
|---|---|
| **JAMES KEPNER, BYRON CARRIER, STEVEN SHULL,** and **ERIC SAUKKONEN,** | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR WRONGFUL TERMINATION OF BENEFITS IN VIOLATION OF 29 U.S.C. § 1001, et seq.** |
| v. | |
| **WEYERHAEUSER COMPANY,** a Washington corporation, | |
| Defendant. | |

Plaintiffs allege as follows:

## INTRODUCTION

1.      This is a class action arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").  Plaintiffs, on behalf of themselves and those similarly situated (collectively the "Class" and individually a "Class Member" or "Class Members"), bring this lawsuit against Defendant Weyerhaeuser Company ("Weyerhaeuser" or the "Company") for reinstatement of retiree healthcare benefits that Weyerhaeuser promised to them and then illegally terminated.

Page 1 – COMPLAINT

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims alleged herein arise under the laws of the United States, specifically ERISA.

3.       Each plaintiff has either exhausted any administrative remedies that may be required under ERISA or, in the alternative, such exhaustion is not required and would be futile based on Weyerhaeuser's unequivocal indication that it will not reinstate Class Members' healthcare benefits unless ordered to do so. The delay of this litigation by futile administrative proceedings would unduly prejudice Plaintiffs and the Class, who are currently suffering under the wrongful denial of the healthcare benefits that they earned and were promised.

4.       Venue is proper in this District under 28 U.S.C. § 1391 because the defendant regularly transacts business within this District and a substantial part of the events giving rise to plaintiffs' claims occurred in this District. The Eugene Division of this Court is an appropriate forum because Plaintiff Byron Carrier is a resident of Lane County and Weyerhaeuser maintains a significant operating presence in Lane County, and a substantial number of Weyerhaeuser retirees who are Class Members reside in counties comprising the Eugene Division of this Court.

## PARTIES

5.       Plaintiff James Kepner is a retired Weyerhaeuser salaried employee residing in Multnomah County, Oregon. Mr. Kepner joined Weyerhaeuser as a salaried employee in 1965 and retired in 1991 as a Financial and Project Manager in the Company's forest products division. Mr. Kepner was induced to join and remain with Weyerhaeuser as a salaried employee based in part on the Company's benefit plan, including retiree healthcare benefits. After

Page 2 – COMPLAINT

Weyerhaeuser terminated its remaining contributions to his healthcare benefits on January 1,

2015, Mr. Kepner began the Company's administrative appeal process. On September 10, 2015,

Mr. Kepner exhausted that process when the Company denied his level two appeal.

      6.     Plaintiff Byron Carrier is a retired salaried employee of Weyerhaeuser residing in

Springfield, Lane County, Oregon.  Mr. Carrier began his career with Weyerhaeuser in 1975 as

a Forest Research Technician and retired in 2014 as a Senior Research Forester.  At the time of

his hire, Mr. Carrier was induced to join Weyerhaeuser in part based on the Company's

promised benefits package, including retiree healthcare benefits.  Contrary to its promise, after

Mr. Carrier's retirement, Weyerhaeuser has never contributed to his healthcare. Currently,

Mr. Carrier pays out of pocket for healthcare coverage that has higher deductibles and is inferior

to that promised to him by the Company.

      7.     Plaintiff Steven Shull is a retired salaried employee of Weyerhaeuser residing in

Fox Island, Washington. Mr. Shull joined Weyerhaeuser as a salaried employee in 1967 and

retired from the Company in 1999 as Comptroller of Financial Operations of the Company's

pulp division. Mr. Shull was recruited and retained by Weyerhaeuser as a salaried employee

based in part on the Company's benefits package, including lifetime healthcare benefits for

retirees. Mr. Shull is a licensed pilot and forwent a career as a commercial airline pilot in favor

of a career with Weyerhaeuser in large part based on the Company's promise of a secure

retirement. Mr. Shull currently pays out of pocket for healthcare benefits promised to him by

Weyerhaeuser.

      8.     Plaintiff Erik Saukkonen is a retired Weyerhaeuser salaried employee residing in

Deschutes County, Oregon. Mr. Saukkonen began working for Weyerhaeuser as a summer

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

employee while he was a student at the University of Oregon in 1959, joined the Company's

salaried ranks as an Assistant Personnel Manager in 1964, and retired in 1996 as a General

Manager of remanufacturing. Mr. Saukkonen worked with Weyerhaeuser his entire carrier, in

reliance on Weyerhaeuser's promise of a secure retirement, including lifetime healthcare

benefits.

9.      Defendant Weyerhaeuser Company is a Washington corporation with its principal

place of business located at 33663 Weyerhaeuser Way South, Federal Way, Washington.

Weyerhaeuser owns more than one million acres of forest in the State of Oregon including

significant holdings in the Coos Bay, Springfield, North Valley, South Valley, and Columbia

regions.  Weyerhaeuser conducts expansive forestry operations in Oregon.  Hundreds of current

and retired Weyerhaeuser employees reside in Oregon.  Weyerhaeuser's commercial contact

with Oregon is continuous and systematic such that it is effectively at home in the State.

## COMMON ALLEGATIONS OF FACT

10.      Weyerhaeuser is one of the largest forest products companies in the world, is

publicly traded on the New York Stock Exchange, and has a market cap of approximately $23

billion.

11.      Weyerhaeuser holds itself out as a "truly great company" and an industry leader in

ethics, integrity, and accountability.  Weyerhaeuser's website, located at

www.weyerhaeuser.com/company/vision-and-values, emphasizes that at Weyerhaeuser "[w]e

do the right thing, the right way, for the right reasons," that Weyerhaeuser "do[es] what we say

we're going to do," and that the Company has a "great commitment to community."

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

12.    Part of the community that Weyerhaeuser espouses a "great commitment to" are its employees, both active and retired, whose dedication and service to the Company facilitated its growth over the span of more than a century from a small, local operation into a global forest products juggernaut.

13.    Under the "Careers" subpage of Weyerhaeuser's website, prospective job applicants are met with a promise that at Weyerhaeuser "[o]ur values are not just words on a page.  Every company talks about values, but at Weyerhaeuser, you can believe they are absolutely real. . .  They are guideposts for everything we do.  And, as our CEO likes to say, *that won't change, period, the end*.  We always strive to do the right thing in the right way.  If that speaks to you, please join us."

14.    Unfortunately for Plaintiffs and the Class, after dedicating their careers to serving the Company and placing their faith in Weyerhaeuser's commitment to them, its CEO's boast that Weyerhaeuser's values "won't change, period, the end" now rings hollow.

15.    Weyerhaeuser's proffered commitment to its employees, both active workers and retirees, is not an exercise in selfless corporate benevolence.  Rather, it is a critical recruiting tool in a competitive industry.  Weyerhaeuser relies on a competitive, comprehensive benefits plan to induce top talent to join the Company and to remain on board as they gain experience and their service becomes more valuable.

16.    Weyerhaeuser began offering a desirable benefits plan, both to recruit new hires and to induce hourly, union employees to join the Company's salaried ranks long before the enactment of ERISA in 1974.

Page 5 – COMPLAINT

17.    The Company's benefits packages contained a host of retiree benefits including pension benefits, continued healthcare, and life insurance.  Weyerhaeuser offered these benefits to employees as an incentive and inducement for them not only to join the Company or transition to a salaried role, but to commit their careers to Weyerhaeuser's service.  To that end, the Company conditioned receipt of retiree benefits on a combination of attained age and accrued years of vesting service.  The offer and promise that Weyerhaeuser made to its salaried employees at that time, including Plaintiffs and Class Members, was that if they held up their end of the bargain and retired from the Company in good standing, they would be secure in their benefits for the rest of their lives, "period, the end."

18.    When Plaintiffs and Class Members became salaried Weyerhaeuser employees, they relied on the Company's promise that retiree benefits including healthcare and life insurance would vest upon their retirement.  As repeatedly affirmed by Weyerhaeuser, both verbally and in writing, the promised retiree benefits were part of Plaintiffs' and Class Members' compensation.

19.    When Plaintiffs and Class Members undertook their service to Weyerhaeuser, and for many years thereafter, the Company never stated or gave any indication whatsoever that retiree benefits were subject to termination or reduction in value.  That is because the unambiguous, mutual understanding of the parties was that once the employee completed his or her end of the bargain by serving the Company through retirement, Weyerhaeuser would honor its commitment by providing the promised benefits for the remainder of the retiree's life.

20.    In 1974, the United States Congress passed ERISA to govern the creation and administration of retirement benefit plans including welfare benefits plans such as those

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL.01

established by Weyerhaeuser to provide health benefits and life insurance to the Company's salaried retirees.

21.     In 1979, in accordance with ERISA, Weyerhaeuser distributed a Summary Plan Description ("1979 SPD") to its salaried employees, including Plaintiffs and Class Members, informing them of the nature and scope of their benefits package.  The 1979 SPD consisted of eleven booklets which, collectively, constituted the employee's "Total Compensation Plan." Each booklet in the 1979 SPD described a different category of benefit to which the salaried employee was entitled.

22.     Several of the booklets described benefits that were only available during active employment.  For example, one booklet, titled "Surviving Spouse Income Insurance for Salaried Employees" states under the heading "Cessation of Active Work" and subheading "Retirement" that "[surviving spouse income insurance] will terminate on the date of your retirement."  Under the section titled "Termination of Coverage" the booklet reiterates unambiguously that "[y]our Surviving Spouse Income Insurance terminates . . .; (b) when you retire . . ."  Likewise, the booklet titled "Dental Care Plan for Salaried Employees" states unambiguously that "[p]articipation in this [Dental Care] Plan for you and your eligible dependents shall terminate on the date of your retirement."

23.     Conversely, other booklets in the 1979 SPD, including one titled "Health Care Plan for Salaried Employees" ("1979 HCP") described benefits that employees were entitled to continue after retirement.  Page seven of the 1979 HCP describes employees' right to continue healthcare benefits after retirement and states that "[i]f at the date of retirement you are eligible to receive benefits under the Weyerhaeuser Company Retirement Plan, you have the option of

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

paying for continued coverage. . . The current costs of this coverage are [between $9-14 per person per month]. In the event the retiree dies, his or her spouse and eligible children may continue coverage if such coverage was in force at the time the retiree died." Thus, provided that retirees elected to make a small monthly contribution to continue coverage, Weyerhaeuser would continue to subsidize health benefits consistent with what they enjoyed during active employment for the remainder of the retiree's life.

24.     Nowhere in the 1979 HCP did Weyerhaeuser reserve the right to unilaterally terminate or materially reduce retiree healthcare benefits. Rather, the 1979 HCP indicates that retirees and their eligible spouses may continue their healthcare benefits for the remainder of their lives, commensurate with the coverage available to active employees, provided only that they make a small monthly contribution to continuing coverage.

25.     Plaintiffs and Class Members, at the time of their retirement, were eligible for benefits under the Weyerhaeuser Company Retirement Plan ("Pension Plan") and, therefore, were entitled to continue to receive healthcare benefits provided and subsidized by Weyerhaeuser for the duration of their retirement. Plaintiffs and Class Members continuously made the required monthly payments to continue coverage. In sum, the Class held up its end of the bargain and performed all conditions required by Weyerhaeuser to preserve their entitlement to continued healthcare benefits provided by the Company.

26.     On information and belief, between 1979 and 1989, Weyerhaeuser issued multiple subsequent SPDs ("1980s SPDs") affirming its commitment to provide retirees and their spouses with healthcare benefits on terms that were materially similar to the 1979 SPD.

Page 8 – COMPLAINT

27.    On information and belief, the 1980s SPDs, like the 1979 SPD, did not reserve to Weyerhaeuser the right to unilaterally terminate or materially reduce retiree healthcare benefits. This omission was consistent with Weyerhaeuser's promise to Plaintiffs and Class Members that lifetime healthcare benefits was part of their deferred compensation for a career-long commitment to the Company.

28.    Plaintiff Steve Shull has repeatedly requested in writing that Weyerhaeuser, consistent with the requirements of ERISA, provide him with copies of the 1980s SPDs and other pre-1990 Plan Documents. Weyerhaeuser has flatly refused to provide the documents.

29.    On or around 1990, Weyerhaeuser began circulating Plan Documents and other materials regarding retiree benefits including a "1990 SPD" that, for the first time, included a reservation of rights clause ("ROR") purporting to allow Weyerhaeuser to "modify or amend [the Plan], require or change retiree contributions to [the Plan], or terminate and substitute another retiree plan in the future." The ROR goes on to state that "[t]hese changes may be independent of any actions that might occur to the company's active salaried employee programs."

30.    By introducing the ROR, more than a decade after issuing the 1979 SPD and in some cases after Class Members had accrued more than 20 years' service to the Company, Weyerhaeuser began to lay the groundwork for its future efforts to renege on its promise to Plaintiffs and Class Members.

31.    The ROR was significant for two reasons. First, it purported to weaken the Company's promise of retiree healthcare benefits by making it contingent on the Company's whim rather than the retirees completion of vesting service. Second, unlike the 1979 SPD and

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

1980s SPDs, by stating that "[t]hese changes may be independent of any actions that might occur to the Company's active salaried employee programs," the 1990 SPD for the first time attempted to divorce retirees' right to healthcare benefits from what the Company provided for its active employees.

32.    Plaintiffs and Class Members were induced to join and commit to Weyerhaeuser's salaried ranks by the Company's offer of lifetime healthcare benefits consistent with those of active employees.  The terms of the 1990 SPD, including the newly introduced ROR, attempted to unilaterally degrade the value of that offer even as Plaintiffs and the Class Members were in the midst of good faith performance.

33.    The inclusion of the ROR in the 1990 SPD was accompanied by an arbitrary segregation of U.S. salaried employees into two groups that Weyerhaeuser referred to thereafter as "Plan I" and "Plan II."  Weyerhaeuser defined Plan I as employees who were eligible for vested retirement on or before December 31, 1989.  Plan II referred to employees who became eligible for retirement thereafter. Plaintiffs and the Class Members are all members of Plan II.

34.    Prior to 1990, no distinction was ever made among Weyerhaeuser employees on the basis of the date of their retirement eligibility.  Plan II employees were made an identical offer of retirement benefits as Plan I employees.  Weyerhaeuser has never explained the reason or authority for the segregation of Plan I from Plan II. Indeed, most Class Members were unaware of the segregation until decades later when it became the Company's purported justification for cutting off their HRA contributions.

35.    Other than the slyly introduced ROR, Weyerhaeuser gave Plaintiffs and Class Members no indication of its surreptitious intent to dishonor its promise to continue their

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

healthcare benefits through retirement. On the contrary, Weyerhaeuser and its human resources staff repeatedly assured Plaintiffs and Class Members, verbally and in correspondence, that they would continue to enjoy the Company's healthcare benefits throughout their vested retirement. Plaintiffs and Class Members, relying on the Company's promise, continued to work in its service.

36.    In 2003, then Chairman, President and CEO of Weyerhaeuser, Steven Rogel, notified retirees that due to rising healthcare costs, the Company was making changes to healthcare benefits that required increased cost sharing by both active employees and retirees. In making the changes, the Company stated that it sought "1) to *honor our commitments to retirees*, 2) to *maintain a retiree health program comparable to others in our industry*, and 3) to *share* cost increases between retirees and the company." Mr. Rogel went on to explain that he "acknowledge[d] that these changes are not pleasant news, but that they will help maintain a competitive and growing Weyerhaeuser Company that can *continue to provide quality retiree health coverage*." Thus, even as Weyerhaeuser, consistent with the promise of the 1979 SPD, made slight modifications to retiree contributions to account for increased costs, it reaffirmed the Company's promise that it would provide them with quality coverage commensurate with that available to active employees.

37.    Over the next several years, various minor changes in coverage and contributions occurred both with respect to retirees and active employees. None of these changes materially altered the promised benefit whereby Weyerhaeuser would provide its retirees and their spouses with healthcare for the remainder of their lives. On the contrary, with each change

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

Weyerhaeuser repeatedly affirmed its underlying commitment to provide Plaintiffs and the Class Members with healthcare benefits.

38.    In 2009, then Weyerhaeuser President and CEO Dan Fulton sent correspondence to retirees regarding further changes to their healthcare benefits.  In that correspondence, Weyerhaeuser informed retirees of a transition to a Primera Medical Plus Plan.  The new Plan required higher deductibles but lower monthly contributions from retirees.  The Primera Medical Plus Plan then offered to retirees was identical to the plan available to then-active employees.  In the 2009 correspondence, Mr. Fulton again reiterated that Weyerhaeuser "remain[ed] *committed to offering medical benefits to retirees*" and that "retirees are an important part of our culture."

39.    Effective January 1, 2011, Weyerhaeuser replaced the Primera Medical Plus Plan with the Weyerhaeuser Health Reimbursement Arrangement Plan ("HRA").  The HRA was designed to permit eligible retirees, including Plaintiffs and Class Members "to obtain reimbursement [from Weyerhaeuser] of eligible healthcare expenses incurred."  Pursuant to the HRA, Weyerhaeuser was to credit Plaintiffs and Class Members' HRA accounts with funds that would offset and reimburse Plaintiffs' and Class Members' healthcare costs.  Thus, while the HRA allowed retirees to select their own specific eligible health plan, Weyerhaeuser's promise to provide for their lifetime healthcare benefits remained intact.

40.    Between introduction of the HRA on January 1, 2011 and December 31, 2014, Weyerhaeuser made contributions to the healthcare costs of Plaintiffs and Class Members in the average amount of approximately $1,324 per person per year.  The aggregate annual cost of these contributions by Weyerhaeuser to Class Members' HRA Accounts totaled $5.5 million.

Page 12 – COMPLAINT

41.     On January 1, 2015, Weyerhaeuser unilaterally terminated its contributions to the HRA accounts of Plaintiffs and Class Members, reneging on the Company's promise to provide them with healthcare benefits for remainder of their lives.

42.     Notably, Weyerhaeuser singled out only Plan II retirees, including Plaintiffs and Class Members, for disparate treatment.  The Company continues to honor its promise of lifetime healthcare benefits with respect to several other classes of retirees including Plan I retirees, retired employees who joined the Company in its 2002 hostile takeover of Willamette Industries, and foreign salaried retirees.  Plaintiffs and Class Members have been arbitrarily singled out and cast aside by Weyerhaeuser.

43.     Weyerhaeuser's illegal termination of promised healthcare benefits has worked immense hardship of Plaintiffs and Class Members.  Class Members, after devoting their working careers to Weyerhaeuser, are incapable of reentering the workforce.  Many Class Members struggle to get by on fixed incomes and rely heavily on Weyerhaeuser's promised healthcare benefits to ensure that they have adequate resources to meet other critical needs including food and housing.

44.     Class Members' decision to accept Weyerhaeuser's offer and serve the Company as salaried employees carried high opportunity cost.  Relying on the Company's promise of retirement benefits, many Class Members explicitly turned down other, more lucrative employment opportunities.  Plaintiff Steve Shull, for example, forwent opportunities to become a commercial airline pilot (he is an Air Force veteran and licensed pilot who obtained commercial and instrument ratings) and a member of a reputable accounting firm. Mr. Shull

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

estimates that his decision to forgo these opportunities in favor of his career with Weyerhaeuser reduced his lifetime earnings by as much as 50%.

45.    Further, by leaving the unionized ranks and becoming salaried employees, Class Members undertook more responsibility and longer hours while, at the same time, forfeiting their right to overtime pay.  Class Members contributed service to the Company well beyond the normal forty-hour work week.  Many Class Members managed and supervised Weyerhaeuser facilities that operated 24 hours a day, seven days a week.  The nature of Class Members' responsibilities guaranteed that Company business would interrupt their off-hours, weekends, vacation time, and holidays.  Class Members reasonably expected that their exceptional level of commitment would be reciprocated with a compensation package commensurate with their efforts.  To that end, Weyerhaeuser promised Class Members a benefit package focused on long-term security, anchored by lifetime healthcare benefits, as a distinguishing feature of salaried employment.  By choosing salaried employment, Class Members traded overtime pay and greater work-life balance in favor of deferred compensation in the form of a more secure retirement.

46.    Had Weyerhaeuser told Plaintiffs and Class Members the truth – that it might one day unilaterally terminate retirement healthcare benefits – when they were deciding whether or not to become salaried employees, they would have had the option of making an informed choice.  Informed Class Members might have opted to remain union employees of the Company and receive better pay.  They might have rejected Weyerhaeuser's employment offer and, instead, gone to work for a competitor with better retirement or other benefits.  Even if a Class Member had decided to become a salaried employee, he or she would have had significantly

Page 14 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

less incentive to stay with the Company for enough years to become vested.  Instead, Plaintiffs and Class Members accepted Weyerhaeuser's offer and began work according to its terms.  That offer included an unambiguous, irrevocable promise that if Plaintiffs and Class Members retired from the Weyerhaeuser in good standing, the Company would compensate them with healthcare benefits throughout their retirement.

47.    By retiring in good standing and continuing participation in the Company's retiree healthcare program, Plaintiffs and Class Members held up their end of the bargain and completed all conditions precedent to receiving healthcare benefits.  By eliminating the Primera Medical Plus Plan and replacing it with the inferior HRA, and again by unilaterally terminating HRA contributions and failing to provide alternate coverage, Weyerhaeuser dishonored its reciprocal promise.

48.    Several Plaintiffs and Class Members have repeatedly requested, individually and at times collectively, that Weyerhaeuser honor its promise and reinstate benefits.  Their appeals have fallen on deaf ears.  Not only has Weyerhaeuser refused to reinstate healthcare benefits, it has stonewalled Plaintiffs' requests, pursuant to ERISA, that it provide them with pre-1990 plan documents explaining their rights.  Incredibly, Weyerhaeuser insists that these documents, with which Weyerhaeuser induced Plaintiffs and Class Members to its employ, are *irrelevant* to a determination of their rights.

49.    Rather than provide Plaintiffs and Class Members with the plan documents that they assented to and that created and control their right to healthcare benefits, Weyerhaeuser has provided the Class only the 1990 SPD and its successor documents.

Page 15 – COMPLAINT

50.     Weyerhaeuser's refusal to provide earlier documents is, of course, not an accident. Weyerhaeuser is well aware of the promise that it made to retirees who came to work for the Company both before ERISA was enacted and thereafter under the 1979 SPD and 1980s SPDs. Rather than honor that promise, Weyerhaeuser is attempting to obfuscate it in an effort to misinform Plaintiffs and Class Members that the ROR is binding on them.

51.     Likewise, Weyerhaeuser's ultimate decision to shirk its obligation to Class Members is transparently self-serving.  Eliminating Class Members' healthcare from its budget enabled Weyerhaeuser to instantly convert tens of millions of previously earmarked dollars into corporate earnings.

52.     Weyerhaeuser's cynical attempt to pad its short-term financials by usurping benefits that its retirees worked their lives to earn makes a mockery of its promise that the Company does "the right thing, the right way, for the right reasons."

## CLASS ALLEGATIONS

53.     Plaintiffs bring this lawsuit on behalf of themselves, each Class Member, and the Class, collectively, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(1), (b)(2), and/or (b)(3) and/or (c)(4).  This lawsuit satisfies each material requirement of those provisions, including numerosity, typicality, commonality, adequacy, predominance, and superiority.

54.     The proposed Class is defined as:

### Nationwide Class

All Plan II retirees and their eligible spouses whose rights to healthcare benefits including coverage, contributions, reimbursement, or premium coverage have been adversely affected by the terminations, reductions, or changes in retiree healthcare benefits by Weyerhaeuser between December 31, 2010 and the present.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

55.     Plaintiffs reserve the right to amend the Class definition, to add additional classes or subclasses, or to expand or modify the scope of the Class in any other way as Plaintiffs may deem appropriate in light of further investigation, discovery, or other revelations learned during these proceedings.

### Class Members are so Numerous that Joinder is Impracticable

56.     Plaintiffs are unaware of the precise number of Class Members, but reasonably estimate the Class to include approximately 4,000–5,000 individuals.

57.     Class Members are so numerous that their individual joinder in this lawsuit is impracticable and disposition of their claims as a class action will provide significant benefits to the parties and the Court.

58.     Class Members are readily identifiable from documents in the possession, custody, or control of Weyerhaeuser.

### Plaintiffs' Claims Are Typical of the Class

59.     Plaintiffs' claims alleged herein are typical of the claims of the Class.  Like the Class Members, Plaintiffs were induced to become salaried employees of Weyerhaeuser by the promise of lifetime retiree healthcare benefits for themselves and their spouses.  Like the Class Members, Plaintiffs earned the vested benefits they were promised by devoting their careers to the Company and have suffered from Weyerhaeuser's illegal decision to unilaterally renege on its promise.  Weyerhaeuser's broken promise that is the factual basis of this lawsuit is the underpinning of Plaintiffs' claims and those of the Class.

///

///

Page 17 – COMPLAINT

**Plaintiffs and Their Counsel Will Adequately Represent the Class**

60.     Plaintiffs, collectively, are a cross section of the Class that includes retirees from various geographic regions, divisions of the Company, and levels of management.  Plaintiffs are Class Members and will fairly and adequately represent the interests of the Class without conflict or hindrance.

61.     Plaintiffs' counsel has the knowledge and experience necessary to protect the interests of the Class.  Plaintiffs' lead counsel, Michael E. Haglund, has been a member of the Oregon State Bar since 1977 and has previously served as lead counsel in numerous complex cases including class actions in federal court.

62.     Before filing this action, Plaintiffs' counsel has conducted extensive investigation into the law and facts underlying the claims alleged herein, including extensive review of documents, legal research, and meetings with Plaintiffs and other Class Members.

63.     Plaintiffs and their counsel possess the financial resources and commitment necessary to vigorously prosecute this action to its conclusion.

**Common Questions of Law and Fact Predominate**

64.     Resolving common issues of law and fact among Plaintiffs and the Class will advance this litigation as to all Class Members. Issues common to the Class include but are not limited to:

- Whether Weyerhaeuser promised lifetime healthcare benefits to retirees and their eligible spouses between 1960 and 1989;

- Whether Weyerhaeuser had a right to unilaterally alter and weaken that promise in its favor by introducing the ROR while Class Members were in the midst of performance.

Page 18 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

- Whether Weyerhaeuser had a right to unilaterally renege on its promise of lifetime healthcare benefits to Class Members;

- Whether Weyerhaeuser broke its promise to provide Class Members with lifetime healthcare benefits when, in 2011, it eliminated the Primera Medical Plus Plan for Class Members and replaced it with the HRA;

- Whether Weyerhaeuser broke its promise to provide Class Members with lifetime healthcare benefits when, effective January 1, 2015, it terminated contributions to the HRA.

- Whether and to what extent Weyerhaeuser is obligated to provide Class Members with healthcare benefits for the remainder of their lives;

- Whether Class Members are entitled to injunctive relief from Weyerhaeuser's 2011 termination of the Primera Medical Plus Plan under Section 502(a)(1)(B) of ERISA;

- Whether Class Members are entitled to injunctive relief from Weyerhaeuser's 2015 termination of contributions to the HRA under Section 502(a)(1)(B) of ERISA;

- Whether Class Members are entitled to injunctive relief from Weyerhaeuser's 2011 termination of the Primera Medical Plus Plan under Section 502(a)(3) of ERISA;

- Whether Class Members are entitled to injunctive relief from Weyerhaeuser's 2015 termination of contributions to the HRA under Section 502(a)(3) of ERISA;

- Whether and to what extent Weyerhaeuser is liable to Class Members for restitution for healthcare benefits that were wrongly denied to them between January 1, 2011 and the present as a result of the termination of the Primera Medical Plus Plan; and

- Whether and to what extent Weyerhaeuser is liable to Class Members for restitution for healthcare benefits that were wrongly denied to them between January 1, 2015 and the present as a result of the termination of contributions to the HRA.

**Class Action is the Superior Method of Adjudicating this Dispute**

65.    Adjudication as a class action is the fairest and most efficient mechanism to resolve this dispute.

Page 19 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

66.    Prosecution of their claims alleged herein would be cost prohibitive to the large majority of Class Members.  It is doubtful that a significant percentage of Class Members would pursue their claims in the absence of a class action.  Accordingly, without a class action, thousands of Class Members will be effectively denied a remedy.

67.    Class-wide resolution of the common questions of law and fact alleged in paragraph 64 herein will conserve judicial and party resources by eliminating the need for piecemeal litigation.

68.    Piecemeal litigation in the absence of a class action risks inconsistent determinations of the nature and scope of Weyerhaeuser's liability and its obligation to take corrective action that would impair prevailing Class Members' ability to adequately protect their interests.  Adjudication of this dispute as a class action will ensure consistency in the treatment of all Class Members and in the nature and scope of Weyerhaeuser's liability and the corrective action incumbent upon it.

69.    Weyerhaeuser has acted or refused to act on grounds generally applicable to the Class. Accordingly, any declarative, injunctive, or other equitable relief awarded by the Court will be appropriate on a class-wide basis.

70.    For the reasons stated above, the class action mechanism is the superior method of adjudicating this dispute.

## FIRST CLAIM FOR RELIEF

### (Restoration of Healthcare Benefits – ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B))

71.    Plaintiffs incorporate and reallege the preceding paragraphs of this Complaint as though fully set forth herein.

Page 20 – COMPLAINT

72.    Plaintiffs bring this claim on behalf of themselves and the Class.

73.    Section 502(a)(1)(B) of ERISA authorizes a participant in or beneficiary of a retiree welfare benefit plan to bring suit to recover benefits due, to enforce his or her rights, or to clarify his or her right to future benefits thereunder.

74.    When Class Members began their tenure as salaried employees of Weyerhaeuser, as part of their total compensation package the Company offered them inclusion in a welfare benefit plan that included lifetime healthcare benefits, consistent with the terms of the 1979 SPD, that would accrue to retirees and their spouses upon their vested retirement from the Company.

75.    By accepting, continuing, and completing their vesting service to the Company, retirees accepted the offered welfare benefit plan consistent with the terms of the 1979 SPD. Likewise, retirees' spouses became plan beneficiaries.

76.    Once Class Members began performance by accepting salaried employment with the Company, Weyerhaeuser was not free to revoke its offer of benefits as stated in the 1979 SPD.

77.    Upon retirement from the Company, retirees' right to lifetime healthcare benefits for themselves and their spouses vested.

78.    By terminating the Primera Medical Plus Plan and replacing it with the HRA effective January 1, 2011, Weyerhaeuser breached its obligation to Plaintiffs and Class Members to provide lifetime healthcare benefits consistent with those promised in the 1979 SPD.

Page 21 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

79.    In the alternative, by terminating contributions to the HRA on January 1, 2015, Weyerhaeuser breached its obligation to Plaintiffs and Class Members to provide lifetime healthcare benefits consistent with those promised in the 1979 SPD.

80.    As a result of Weyerhaeuser's breach of its obligation to continue making contributions to the HRA on a monthly basis from January 1, 2015 to the present, Plaintiffs and Class Members have collectively suffered an estimated $7.8 million in damages from January 1, 2015 through May 31, 2016.  The precise amount of damages owing by defendant to Plaintiffs and Class Members will be specifically proven at trial.

81.    Plaintiffs and Class Members are entitled to the following equitable relief:

- Declaring that they are entitled to lifetime healthcare benefits from the Company consistent with those promised in the 1979 SPD;

- Declaring that any plan amendment, substitution, or termination purporting to reduce or terminate such benefits is null and void;

- Ordering Weyerhaeuser to reinstate Class Members' healthcare benefits on terms consistent with those promised in the 1979 SPD;

- Ordering Weyerhaeuser to reimburse Plaintiffs and Class Members in the amount of the total value of healthcare benefits improperly withheld from them between January 1, 2011 and the present or, in the alternative, between January 1, 2015 and the present and prejudgment interest thereon as provided by law;

- Awarding Plaintiffs and Class Members their reasonable attorneys' fees, expenses, and costs; and

- Ordering such other relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (Demand for Equitable Relief – ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3))

82.    Plaintiffs incorporate and reallege the preceding paragraphs of this Complaint as though fully set forth herein.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

83.     Plaintiffs bring this claim on behalf of themselves and the Class.

84.     Section 502(a)(3) of ERISA authorizes a participant in or beneficiary of a retiree welfare benefit plan to bring suit to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, to obtain other appropriate equitable relief to redress such violations or enforce any provisions of ERISA or the terms of the plan.

85.     The 1979 SPD is, at minimum, ambiguous regarding whether and to what extent Class Members are entitled to lifetime healthcare benefits.

86.     Between 1979 and 1990, Weyerhaeuser employees, including high-level executives acting in a fiduciary capacity as that term is defined in 29 U.S.C. § 1002(21)(a), repeatedly and unambiguously assured Class Members, both verbally and in writing, that upon their vested retirement they would be entitled to lifetime healthcare benefits commensurate with those available to active employees as described in the 1979 SPD.

87.     Weyerhaeuser made verbal and written representations that lifetime healthcare benefits were part of salaried employees' total compensation package in order to induce new recruits to join the Company and hourly employees to transition to salaried positions.  At no time during its recruitment of salaried employees did Weyerhaeuser inform Class Members that their right to lifetime healthcare benefits was or might become subject to termination or a material decrease in value at Weyerhaeuser's discretion.

88.     After Class Members became salaried employees of the Company, Weyerhaeuser and its employees acting in their fiduciary capacity continued to use the promise of lifetime healthcare benefits to induce them to remain with the Company through their retirement, a commitment that often exceeded 30 years of service.

Page 23 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01

89.    Weyerhaeuser's promise of lifetime healthcare benefits as part of Class Members' total compensation package, reiterated repeatedly through the years, was material to Class Members' decision to join and stay with the Company.

90.    But for Weyerhaeuser's promise of lifetime healthcare benefits, Class Members might have pursued other employment opportunities, demanded higher salaries or other compensation, or opted to remain with the Company as hourly, unionized employees. Instead, Class Members reasonably relied on Weyerhaeuser's promise to their detriment.

91.    Class Members' dedication of much or all of their working lives to Weyerhaeuser's service in reliance on its promise constitutes extraordinary circumstances that warrant equitable relief.

92.    Insofar as the 1979 SPD is ambiguous as to whether Class Members are entitled to lifetime healthcare benefits, Weyerhaeuser is estopped from asserting that they are not.

93.    As a result of Weyerhaeuser's breach of its promise to continue making contributions to the HRA on a monthly basis from January 1, 2015 to the present, Plaintiffs and Class Members have collectively suffered an estimated $7.8 million in damages from January 1, 2015 through May 31, 2016.  The precise amount of damages owing by defendant to Plaintiffs and Class Members will be specifically proven at trial.

94.    Plaintiffs and Class Members are entitled to the following equitable relief:

- Declaring that they are entitled to lifetime healthcare benefits from the Company consistent with those promised in the 1979 SPD;

- Declaring that any plan amendment, substitution, or termination purporting to reduce or terminate such benefits is null and void;

///

///

Page 24 – COMPLAINT

- Ordering Weyerhaeuser to reinstate Class Members' healthcare benefits on terms consistent with those promised in the 1979 SPD;

- Ordering Weyerhaeuser to reimburse Plaintiffs and Class Members in the amount of the total value of healthcare benefits improperly withheld from them between January 1, 2011 and the present or, in the alternative, between January 1, 2015 and the present and prejudgment interest thereon as provided by law;

- Awarding Plaintiffs and Class Members their reasonable attorneys' fees, expenses, and costs; and

- Ordering such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court award the following relief:

1.  Ordering certification of an appropriate Class, appointing Plaintiffs as Class Representatives and Plaintiffs' counsel of record as Class Counsel;

2.  Declaring that Plaintiffs and Class Members are entitled to lifetime healthcare benefits from the Company consistent with those promised in the 1979 SPD;

3.  Declaring that any plan amendment, substitution, or termination purporting to reduce or terminate such benefits is null and void;

4.  Ordering Weyerhaeuser to reinstate Class Members' healthcare benefits on terms consistent with those promised in the 1979 SPD;

5.  Awarding damages to reimburse Plaintiffs and Class Members in the amount of the total value of healthcare benefits improperly withheld from them between January 1, 2011 and trial or, in the alternative, damages presently estimated at $7.8 million to cover the cost of health care benefits improperly withheld between January 1, 2015 and trial, but in amounts to be specifically proven at trial;

6.  Awarding Plaintiffs and Class Members prejudgment interest on all damages and their reasonable attorneys' fees, expenses, and costs incurred herein; and

///

///

///

Page 25 – COMPLAINT

7.    Ordering such other relief as the Court deems just and proper.

DATED this 8th day of June, 2016.

HAGLUND KELLEY LLP

By
Michael E. Haglund, OSB No. 772030
Email: mhaglund@hk-law.com
Eric J. Brickenstein, OSB No. 142852
Email: ebrickenstein@hk-law.com
Attorneys for Plaintiffs

Page 26 – COMPLAINT

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01