UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JAMES KEPNER, et al.,

          Plaintiffs,

v.

WEYERHAEUSER COMPANY, a
Washington Corporation,

          Defendant.

Case No. 6:16-cv-01040-AA
OPINION AND ORDER

AIKEN, District Judge:

Plaintiffs, retired salaried employees of Weyerhaeuser Company (Weyerhaeuser), brought this putative class action alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2012) (ERISA). Defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, the motion is granted.

I. BACKGROUND

The following facts are taken from Plaintiffs' Complaint. For the purposes of this motion, the court "accept[s] all factual allegations in the complaint as true and constru[es] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).

This case centers on Defendant's retiree healthcare plan, which has undergone many

1 – OPINION AND ORDER

changes over the last several decades. In 1979, in accordance with ERISA, Defendant released its first Summary Plan Description (SPD),[1] which consisted of eleven booklets describing the different categories of benefits then available to salaried employees. (Compl. 7:¶ 21). One of those booklets, entitled "Health Care Plan for Salaried Employees," described the healthcare plan then available to retirees and included the following language:

> "If at the date of retirement you are eligible to receive benefits under the Weyerhaeuser Company Retirement Plan, you have the option of paying for continued coverage . . . . The current costs of this coverage are [between $9-14 per person per month]. In the event the retiree dies, his or her spouse and eligible children may continue coverage if such coverage was in force at the time the retiree died."

(Compl. 7-8:¶ 23). The 1979 SPD contained no language expressly reserving Defendant's right to unilaterally amend or terminate retiree healthcare benefits.

From 1979 through 1989, Defendant issued subsequent SPDs, none of which contained a clause expressly reserving the right to terminate benefits at will. (Compl. 8-9:¶¶ 26, 27).

In 1990, Defendant issued a SPD that, for the first time, contained a reservation of rights clause stating that Defendant reserved the right to "modify or amend [the Plan], require or change retiree contributions to [the Plan], or terminate and substitute another retiree plan in the future." (Compl. 9:¶ 29). The 1990 SPD also separated salaried employees into two groups; "Plan I" and "Plan II" employees. (Compl. 10:¶ 33). Employees who became eligible for vested retirement benefits on or before December 31, 1989 were "Plan I" employees and those who became eligible after that date were "Plan II" employees. (Compl. 10:¶ 33). The representative plaintiffs and putative class members are all Plan II employees. (Compl. 10:¶ 33).

In 2003, Defendant modified its healthcare plan to increase cost sharing from both active and retired employees. (Compl. 11:¶ 36). Defendant made additional minor changes to its

---

[1] 29 U.S.C. § 1022 describes SPDs and sets out what they must contain in detail.

2 – OPINION AND ORDER

healthcare plan over the next several years. (Compl. 11:¶ 37).

In 2009, Defendant informed retirees that it would be switching to a Premera Medical Plus Plan, which required lower monthly contributions from retirees but also had higher deductibles. (Compl. 12:¶ 38).

In 2011, Defendant replaced the Premera Plan with the Weyerhaeuser Health Reimbursement Arrangement Plan (HRA). Under the HRA, Defendant credited retiree HRA accounts to reimburse and offset retirees' healthcare costs. (Compl. 12:¶ 39).

Finally, on January 1, 2015, Defendant unilaterally terminated its contributions to the HRA accounts of all Plan II retirees. (Compl. 13:¶ 41). Plaintiffs then filed suit and alleged claims for unlawful termination of contractually vested healthcare benefits and promissory estoppel.

## II. DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to reasonably infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678. "Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

### A. Claim for Contractually Vested Healthcare Benefits

Plaintiffs allege that they are entitled to contractually vested lifetime healthcare benefits under the terms of the 1979 SPD and seek to recover those benefits pursuant to 29 U.S.C. §

3 – OPINION AND ORDER

1132(a)(1)(B).[2] In response, Defendant argues that the 1990 SPD superseded 1979 SPD and rendered it null, and that even if the 1979 SPD is not null, its language does not meet the standard for contractual vesting. Regardless of whether the 1990 SPD superseded the 1979 SPD, I agree that the language of the 1979 SPD fails to meet the standard for contractual vesting. Plaintiffs failed to identify clear and express language in the 1979 SPD promising lifetime healthcare benefits. Therefore, I find that Plaintiffs fail to state a claim for contractually vested healthcare benefits.

When an employer establishes an employee pension plan or an employee welfare benefit plan, the employer must comply with the rules and standards set out in ERISA. *Id.* § 1003(a). Under ERISA, a healthcare benefit plan, like the one at issue here, is classified as an "employee welfare benefit plan." *Id.* § 1002(1) (defining employee welfare benefit plans). ERISA explicitly exempts employee welfare benefit plans from the "elaborate minimum funding and vesting standards" that it imposes on pension plans. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). Accordingly, "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). Thus, because welfare benefits do not vest under ERISA, the only way for welfare benefits to vest is by contract, and "[a] contractual agreement for vesting of benefits must be found in the plan documents." *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995).

To determine whether benefits are vested by contract, courts apply ordinary principles of contract interpretation to ERISA plan documents, including SPDs. *US Airways, Inc. v.*

---

[2] Section 1132(a)(1(B) provides: "A civil action may be brought (1) by a participant or beneficiary (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

4 – OPINION AND ORDER

*McCutchen*, 133 S. Ct. 1537, 1548-49 (2013). Where the terms of plan documents are clear, courts must enforce the agreement as written. *M & G Polymers*, 135 S. Ct. at 933 ("In this endeavor, as with any other contract, the parties' intentions control.") (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). In this case, if the 1979 SPD contained a promise for vested healthcare benefits, Defendant was not free to revoke those benefits in the 1990 SPD. *See Poore v. Simpson Paper Co.*, 566 F.3d 922, 927 (9th Cir. 2009) ("[W]here the parties' dispute concerns a 'right that accrued or vested under the agreement . . . the disputed contractual right survives expiration of the remainder of the agreement.'") (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 206 (1991)). To hold otherwise would be to render the doctrine of contractual vesting effectively meaningless. The issue is whether the 1979 SPD contained a promise for vested lifetime healthcare benefits.

The parties dispute what standard applies to contractual vesting in the Ninth Circuit. Following the reasoning of the Fifth Circuit, several circuits hold that plaintiffs must point to "clear and express language" in plan documents to state a claim for contractually vested welfare benefits. *See, e.g.*, *Wise v. El Paso Nat. Gas Co.*, 986 F.2d 929, 937 (5th Cir. 1993); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998); *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896, 902 (3d Cir. 1995); *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994). Others, like the Second Circuit, for example, explicitly reject *Wise* and hold that ambiguous language, which is "capable of reasonably being interpreted as creating a promise," is enough to survive a motion for summary judgment. *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 84-85 (2d Cir. 2001) (quoting *Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F.3d 976, 980 (2d Cr. 1997)); *see also Temme v. Bemis Co.*, 622 F.3d 730, 736 (7th Cir. 2010) ("[T]he lack of an explicit vesting term is not determinative.");

5 – OPINION AND ORDER

*Balestracci v. NSTAR Elec. & Gas, Co.*, 449 F.3d 224, 231 (1st Cir. 2006) ("We reject the analysis apparently used by the district court . . . that there can never be vesting of retirement welfare benefits unless there is a clear and express statement of such vesting.").

The Ninth Circuit first recognized the clear and express rule in *Cinelli* and later adopted the rule outright. *See Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1160 (9th Cir. 2001) ("Contractual vesting of a welfare benefit, moreover, 'is an extra-ERISA commitment that must be stated in clear and express language.'") (quoting *Wise*, 986 F.2d at 937); *Cinelli*, 61 F.3d at 1441 (recognizing rule).

Nonetheless, Plaintiffs argue that the clear and express rule creates a presumption against vesting and is irreconcilable with "ordinary principles of contract interpretation," and the Supreme Court's reasoning in *M & G Polymers*. 135 S. Ct. at 933 ("We interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law . . . .").[3] Essentially, Plaintiffs argue that the clear and express rule is incompatible with, or contrary to, the ordinary principles of contract law that ambiguous language may give rise to contractual obligations and that extrinsic evidence may be used to construe ambiguous terms to determine the parties' intent. Accordingly, Plaintiffs argue, the ambiguity of the 1979 SPD, coupled with the absence of an express reservation of the right to terminate benefits, is enough to survive a motion to dismiss.

---

[3] Plaintiffs also rely on the Supreme Court decision in *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013). There, the Court held that courts may, in certain circumstances, look outside of plan documents to assist in properly construing ERISA agreements. *Id.* at 1549. In that case, the Court construed an ERISA plan provision that was silent regarding the proper allocation of certain costs. *Id.* The Court explained that where a plan provision's silence leaves a gap, "a court properly takes account of background legal rules—the doctrines that typically or traditionally have governed a given situation when no agreement states otherwise." *Id.* Here, Plaintiffs do not argue that the 1979 SPD is silent; rather, they argue that it is ambiguous. Therefore, I find the reasoning of *US Airways* to be inapposite in this case.

6 – OPINION AND ORDER

However, I am not persuaded that the clear and express rule is incompatible with ordinary principles of contract interpretation as set forth in *M & G Polymers* such that it has no application to claims of contractual vesting.

In *M & G Polymers*, the Supreme Court abrogated the decision of the Sixth Circuit, *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476 (1983), holding that it improperly established a presumption in favor of vested lifetime welfare benefits. *M & G Polymers*, 135 S. Ct. at 937. In *Yard-Man*, the Sixth Circuit found a plan provision discussing retiree welfare benefits to be ambiguous and purported to apply "basic principles of contractual interpretation," to resolve the ambiguity. *Yard-Man*, 716 F.2d at 1479-80. The court looked at the whole agreement, noting the absence of a provision specifically addressing duration of retiree benefits as well as the context of the negotiations, before concluding that "it [was] unlikely that such benefits would be left to the contingencies of future negotiations." *Id.* at 1480-82. Based on those observations the court inferred an intent to vest welfare benefits for life. *Id.* at 1482-83. That inference, the Court held, was "inconsistent with ordinary principles of contract law," and "distort[ed] the attempt 'to ascertain the intention of *the parties*,'" because it "plac[ed] a thumb on the scale in favor of vested retiree benefits." *M & G Polymers*, 135 S. Ct. at 935, 937 (emphasis in original). The Court explained that under ordinary principles of contract law courts should not confer a benefit or obligation absent a clear manifestation of intent. *Id.* at 936-37. Further, courts should not construe ambiguous writings to create lifetime promises. *Id.* at 937. Finally, when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life. *Id.* The Court then remanded the case with instructions to apply ordinary principles of contract law to determine whether the employer intended to promise vested lifetime healthcare benefits. *Id.*

7 – OPINION AND ORDER

The clear and express rule, on the other hand, does not create an inference in favor of vested welfare benefits. Rather, the rule simply requires a clear manifestation of the parties' intent to vest benefits for life, a requirement consistent with the ordinary principles of contract law recounted in *M & G Polymers*. *See id.* at 936-37 ("[C]ourts should not construe ambiguous writings to create lifetime promises."). Absent a clear abrogation of the rule, this Court is bound by Ninth Circuit precedent to apply the rule to the facts of this case.

In this case, the 1979 SPD does not include clear and express language vesting lifetime healthcare benefits. The 1979 SPD makes no mention of the duration of retiree benefits and does not promise that the potential benefits are irrevocable. The 1979 SPD merely states that eligible salaried employees have "*the option* of paying for continued coverage" upon retirement and that an eligible spouse "*may* continue coverage *if* such coverage was in force at the time the retiree died." (Compl. 7-8:¶ 23) (emphasis added). The language that Plaintiffs' rely on cannot reasonably be read as promising irrevocable lifetime benefits. Thus, while Defendant did not explicitly reserve its right to amend or terminate the healthcare plan at will, neither did Defendant clearly and expressly waive its right to do so by promising lifetime healthcare benefits.

Moreover, when the 1979 SPD is construed as a whole and the "Termination of Coverage" section is taken into account, it becomes clearer that Defendant did not intend to promise vested lifetime benefits. That section provides, "[y]our participation in this Plan shall be terminated when you leave the employment of the Company, when you cease to be eligible, *or when the Plan terminates*, whichever is earliest." Declaration of Kim Eckroth, Exhibit 1 at 6, ECF No. 10 (emphasis added).[4] This language reflects that Defendant contemplated the

---

[4] This document was "incorporated into the complaint by reference," and this Court can consider

8 – OPINION AND ORDER

unilateral termination of the plan and did not intend for welfare benefits to be irrevocable. In sum, Plaintiffs fail to identify language in the 1979 SPD that clearly and expressly manifested intent to vest healthcare benefits for life, and they have failed to state a claim for vested lifetime healthcare benefits.

I would find the same result even if Plaintiffs are correct and the clear and express language rule does not apply. A clause giving employees the option to continue coverage for an indefinite period cannot reasonably be construed to vest employees with irrevocable lifetime benefits. In *Devlin*, the case relied on by Plaintiffs, the court found that two statements in a SPD were "reasonably susceptible to interpretation as a promise." *Devlin*, 274 F.3d at 84-85 (quoting *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. 1999)). The first statement provided that "retired employees, after completion of twenty years of full-time permanent service and at least age 55 *will be insured.*" The second statement provided that "[benefits] will remain at [the annual salary level] *for the remainder of their lives.*" *Id.* Unlike the statements in *Devlin*, which include vesting and duration language, the language relied on by Plaintiffs does not refer to vesting or duration, and "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *M & G Polymers*, 135 S. Ct. at 937.

For the foregoing reasons, I find that Plaintiffs fail to state a claim for vested lifetime healthcare benefits upon which relief can be granted.

### B. Claim for Promissory Estoppel

Plaintiffs' also seek equitable relief under a theory of promissory estoppel pursuant to 29

---

it when ruling on this motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

9 – OPINION AND ORDER

U.S.C. § 1132(a)(3).[5]

A plaintiff is required to show five elements to state a claim for promissory estoppel. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 445 (9th Cir. 1992). "[Plaintiffs] must show (1) the existence of a promise, (2) which the promisor reasonably should have expected to induce the promisee's reliance, (3) which actually induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the promise." *Id.* For a promise to be enforceable under a theory of promissory estoppel, "the promise must be clear and unambiguous." *Id.* at 446 (internal quotation marks omitted).

Here, for the reasons explained above, Plaintiffs have failed to allege facts showing a clear and unambiguous promise to vest employees with irrevocable lifetime healthcare benefits. Accordingly, Plaintiffs have failed to state a claim for promissory estoppel.

### III. CONCLUSION

Plaintiffs fail to state a plausible claim for either contractually vested welfare benefits or promissory estoppel. Defendant's motion to dismiss (doc. 9) is GRANTED, and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 10th day of October, 2016

_____
Ann Aiken
United States District Judge

---

[5] Section 1132(a)(3) provides: "A civil action may be brought (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

10 – OPINION AND ORDER